UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEREMY D. ZULLO, | : |
| Petitioner, | : |
| v. | : CIVIL NO. 3:CV-16-0481 |
| R. A. PERDUE, | : (Judge Kosik) |
| Respondent. | : |

**MEMORANDUM**

Presently before the court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by Jeremy D. Zullo ("Petitioner"). Petitioner is an inmate currently confined at the Federal Correctional Institution at Schuylkill, Pennsylvania. Petitioner alleges that his due process rights were violated during a disciplinary hearing after which he was found guilty of the prohibited act of a Code 299 most like Code 296 (Abuse of Mail) violation. (Doc. 2-1 at 4, DHO Report.) The matter is ripe for consideration and, for the reasons that follow, the petition will be denied.

**I.    Factual Background**

On September 20, 2015, Incident Report #2763131 was written against Petitioner, charging him with a Code 299 violation for "Conduct that disrupts - most like a 225, Stalking and 296, Abuse of Mail." (Doc. 12, Ex. A, Bittenbender Decl. ¶. 6.) The incident report was written by Officer A. Leonard, who described the

incident as follows:

> On September 20, 2015, I received a call from ZULLO's child's mother who stated she was reporting ZULLO's harassing contacts with her. She indicated she had blocked all contacts with him through TRULINCS/ CORRLINCS and told him to stop contacting her. She stated she has continued to receive harassing messages from him which she believed came from a cellphone because they came from the number 802-231-0266. She said he is also sending messages to her mother and she saved all the contacts. A review of ZULLO's e-mail messages shows he is using a messaging service to circumvent writing directly to her to continue to send her messages despite being blocked through TRULINCS.

(Doc. 2-1 at 1, Incident Report.)

Petitioner was provided with a copy of the incident report on September 20, 2015, at 7:05 p.m., the same day the incident occurred and the report was written. (Id.) He was advised of his rights by the investigating officer, Lt. M. Donald. Petitioner acknowledged that he understood his rights. He was read the contents of the incident report and declined to make a statement. (Doc. 12-1, Ex. A at ¶¶ 7, 8.)

Based on his investigation, Lt. Donald found that the charges were warranted and that there was sufficient evidence to support the charges. As such, Donald referred the matter to the Unit Discipline Committee ("UDC") for further action. (Doc. 12-1 at 12, 13, Incident Report.)

The UDC conducted a hearing on September 24, 2015, and Petitioner was given the opportunity to make a statement. He made the following remarks, stating, "Not true. My baby's momma is lying. I blocked her. She didn't block me. I did

2

message her threw (sic) the service." (Doc. 12-1 at 12, ¶ 17, Incident Report.)  The UDC referred the charges to the DHO for further hearing and recommended that based on the seriousness of the charge that he used an outside service to send messages, warranting more severe sanctions than the UDC could impose, that the DHO give Petitioner the "max/appropriate sanctions" if the DHO determined that Petitioner had committed the prohibited act. (Id. ¶¶ 19-20.)

On the same date, September 24, 2015, Petitioner was given written notice of his rights regarding the DHO hearing.  These rights were as follows and set forth in the Inmate Rights at Discipline Hearing form provided to Petitioner:

    a.    The right to have a written copy of the charge against him at least 24 hours before the DHO hearing;

    b.    The right to have staff representation;

    c.    The right to call witnesses or present witness statements and to present documentary evidence in his behalf, provided that institutional security would not be jeopardized;

    d.    The rights to present a statement or to remain silent;

    e.    The right to be present throughout the DHO hearing except during a period of deliberation or when institutional security would be jeopardized;

    f.    The right to be advised of the DHO's decision, the facts supporting that decision, except where institutional safety would be jeopardized, and the DHO's disposition in writing, and

    g.    The right to appeal the decision of the DHO.

(Doc. 12-1 at ¶ 12, Attach. 2.)  Petitioner signed this form.  (Id. at ¶ 13, Attach. 2.)

On the same date, he was also given written notice of his DHO hearing. (Id. at ¶ 14, Attach. 3.) While he did request a staff representative on the form, he also stated that he did not want witnesses. (Id.)

The disciplinary hearing was held on October 13, 2015, before DHO Bittenbender. (Doc. 12-1, Bittenbender Decl. ¶ 15, Attach. 4, DHO Report.) It was noted by the DHO that Petitioner received advanced written notice of the DHO hearing and charges against him, he was advised of his rights before the DHO, his staff representative, R. Painter, appeared at the hearing, and that Petitioner did not want to present any witnesses. (Doc. 12-1, Ex. A at ¶ 16; Attach. 4 at 1, DHO Report.) When the DHO again advised Petitioner of his rights, he indicated that he understood them. (Id. at ¶ 17; Attach. 4 at 1.) He provided the following statement "They never blocked Trulincs." (Id.) Petitioner declined to make any further statement and provided a written statement basically stating that the incident report should be dismissed based upon the emails being forwarded by the messaging service, as well as the mental illness suffered by his girlfriend. (Id.) No procedural issues were cited and no documentary evidence was provided by Petitioner for consideration by the DHO. (Id.) The DHO report reflects that all documents in reference to this case were disclosed to Petitioner's staff representative, Case Manager Painter. (Id.)

## II.     Discussion

Respondent does not dispute that Petitioner's claims are exhausted. As such, the court will address the merits of the petition. Petitioner claims that the DHO's finding of guilt is not supported by sufficient evidence of what is alleged in the incident report. In particular, Petitioner claims that there was "no evidence of what was alleged in Incident Report #2763131." (Doc. 1 at 6.) He further claims that he has presented exculpatory evidence which demonstrates that he did not commit the prohibited acts alleged. (Id. at 7.) He therefore wants the finding of guilt overturned and expunged.

The BOP disciplinary process is fully set forth in the Code of Federal Regulations, Title 28, Sections 541 through 541.8. These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate institutional rules. The first step requires filing an incident report and conducting an investigation. Staff are required to conduct the investigation promptly, absent intervening circumstances beyond the control of the investigator. See 28 C.F.R. § 541.5. Following the investigation, the matter is then referred to the UDC for a hearing pursuant to 28 C.F.R. § 541.7. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a

5

prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a DHO for a hearing.  Id.  Based upon the seriousness of the charges against Petitioner, the instant matter was referred for a disciplinary hearing.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  Wolff v. McDonnell, 418 U.S. 539, 556 (1974.)  Greatest category offenses carry a possible sanction of loss of good conduct time credits.  When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive (1)  written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing, (2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the fact finder as to evidence relied on and reasons for the disciplinary action.  See Wolff v. McDonnell, 418 U.S. 539, 564-66 (1974).  The DHO's decision is required to be supported by some evidence in the record.  See Superintendent v. Hill, 472 U.S. 445, 454 (1985); see also Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991)(applying Hill standard to federal prisoner due process challenges to prison disciplinary proceedings).  The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is

whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455-56.  Under Hill, judicial review of a prison disciplinary decision is limited to ensuring that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the ultimate decision has some evidentiary support.  Id. at 457; see also 28 C.F.R. § 541.8(f) (requiring the DHO's decision be "based upon at least some facts and, if there is conflicting evidence, on the greater weight of the evidence.").  Moreover, "[t]he sufficiency standard is met where a DHO supports a finding of culpability solely by reference to an incident report compiled by a corrections officer." Moles v. Holt, 221 F. App'x 92, 94 (3d Cir. 2007)(citations omitted).

The procedural requirements of Wolff and Hill have been met in the instant case.  Petitioner was afforded all requisite due process in the DHO hearing against him, and the DHO met the evidentiary standard for a finding of guilt based on consideration of all the evidence before him.  Petitioner received at least 24 hours notice of the claimed violations prior to the disciplinary hearing.  He received a written statement of the DHO as to the evidence relied upon and the reasons for the disciplinary action taken.  Petitioner was asked if he wanted to present witnesses and documentary evidence in his defense, and did not do so.  (Doc. 12-1 at 19.)  Petitioner requested and was afforded a staff representative, Case Manager Painter.  He also received an impartial disciplinary hearing officer, Mr. Bittenbender.  Although Petitioner may not agree with the result of the hearing, this does not make the DHO

7

biased against him in any way.

While Petitioner contends that the DHO failed to meet the required evidentiary standard, he is mistaken.  A review of the record reveals that the DHO considered all of the evidence before him, which included the following: the reporting officer's statement in the Incident Report; the corroborating memorandum from Case Manager Leonard regarding her phone conversation with the mother of Petitioner's child, Ms. Therrien; and the email records contained in TRULINCS/CORRLINCS between Petitioner and Therrien, which showed that Petitioner used a third-party messenger service to communicate with Therrien and was harassing her.  (Doc. 12-1 at 20, Section V.)  Therrien told Leonard that her family was also being contacted by Petitioner.  Petitioner admitted that he was sending messages to Therrien's mother. (Doc. 2 at 9.)

The DHO also noted in the report that upon questioning Petitioner during the DHO hearing, Petitioner stated that Therrien never blocked TRULINCS.  As such, this was considered, but not found by the DHO to change his determination that the greater weight of evidence/facts supported a finding that Petitioner committed the prohibited act of Conduct which Disrupts - most like Abuse of Mail (TRULINCS) ,

Code 299 most like 296.[1] (Id. at 21.) This conclusion was reached because the DHO found evidence supporting Petitioner's abuse of the email privilege by sending harassing emails through a third-party messaging service.  There is no dispute that Petitioner used the third-party service to send emails.  Although he claims that Therrien never blocked him, and that it was actually him that blocked her, this does not change the result for the following reasons.  First, although Petitioner asked for proof of this "evidence" from Ms. Miller via an Inmate Request, who then referred him to Mr. Pfeiffenberger, this was after the DHO hearing concluded.[2]  There was no documentary evidence presented by Petitioner to the DHO at the hearing.  There is simply nothing to show that the DHO refused to consider any documentary evidence presented by Petitioner.  Second, even if it was Petitioner who "blocked" Therrien, and not the other way around as Petitioner would like the court to accept and references a notation on an exhibit which came into existence after the hearing (Doc. 2, Ex. 3), Petitioner admits using the third-party messaging service to contact Therrien and her parents.  Any argument by Petitioner that Therrien could have just ignored him is unconvincing.

---

[1] The 225 violation of stalking was found to be unsupported and expunged from the report. (Id.)

[2] While Petitioner claims he verbally brought up the issue that Therrien did not block him at the hearing, no documentary evidence in support of this claim was presented.

Also unconvincing is any argument by Petitioner that the DHO did not consider his statements that Therrien was lying and suffered from mental illness.  Petitioner's written statement is clearly referenced in the DHO report written by the DHO.  (Doc. 12-1 at 19, Section III.)  As such, the DHO heard this evidence as presented by Petitioner, and was aware of it.  Further, while Petitioner argues that Therrien knew he did not have a cell phone, a phone number appeared with the messages, and this is confirmed by Petitioner.  While he may not have been using an actual cell phone, a phone number did appear when Petitioner used the third-party messaging service.  This he does not dispute.

Based on the foregoing, the court is confident that the DHO's finding of guilt of the prohibited act was supported by the greater weight of evidence in the record.  Petitioner also received all of the due process protections to which he was entitled to under <u>Wolff</u>.  For these reasons, the instant habeas petition will be denied.  An appropriate order follows.